**WILMINGTON HOUSING AUTHORITY,**
**Employer-Appellant,**

**v.**

**Eliseo GONZALEZ, Claimant-Appellee.**

Superior Court of Delaware,
New Castle.

Feb. 19, 1975.

Robert W. Ralston, of Prickett, Ward, Burt & Sanders, Wilmington, for employer-appellant.

Oliver V. Suddard, Wilmington, for claimant-appellee.

STIFTEL, President Judge.

This appeal reviews an order of the Industrial Accident Board dismissing employer's petition under 19 Del.C. § 2353(a) to suspend ten weeks of benefits because of claimant's refusal to cooperate with a vocational rehabilitation program during this period of time.

On May 14, 1971, claimant injured himself in the course of his employment. Claimant and the employer's insurance carrier entered into a compensation agreement, approved by the Board, under which claimant has received total disability benefits during the period in which he has been unable to work.[1]

In September, 1972, claimant's physician, in a letter to the employer's attorney, recommended that claimant undergo vocational rehabilitation in order to be trained to perform light work. In March, 1973, claimant was interviewed by the Vocational Rehabilitation Service of the Department of Labor of the State of Delaware ("V.R.S."). After this initial interview, claimant made no effort to cooperate with V.R.S. His file was closed by V.R.S. on September 10, 1973 for lack of cooperation.

Employer immediately filed a petition with the Board.[2] At the hearing, employer argued that under § 2353(a), payment of total disability benefits should be suspended for the ten week period in which the V.R.S. file had been closed. Employer claimed that vocational rehabilitation services constituted "reasonable medical services" and that, by refusing to accept those services, claimant had increased his incapacity since he had delayed removal of his disability for the period in which his file had been closed.

19 Del.C. § 2353(a) provides:

"If the employee refuses reasonable surgical, medical, and hospital services, medicines and supplies tendered to him by his employer, he shall forfeit all right

---

1. In June, 1972, the parties filed additional agreements with the Board providing for permanent partial disability benefits for a 10% permanent impairment of claimant's back and leg.

2. November 21, 1972, before the hearing on the petition, V.R.S. re-opened claimant's file after he showed some willingness to cooperate. On December 6, 1972, Gonzalez returned to work.

to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal. Reasonable medical services shall include, if the board so finds, vocational rehabilitation services offered by any public or private agency."

The Board found that claimant "did not cooperate" with V.R.S., but held that the employer's petition must nevertheless be dismissed since there had been no prior ruling by the Board that the vocational rehabilitation services constituted "reasonable medical services". The Board decision stated:

". . . We have no doubt . . . that the claimant did not co-operate with Vocational Rehabilitation. However, we believe in this case the employer has *put the cart before the horse* in that they have filed a petition to terminate total disability for failure to co-operate *without first obtaining from the Board a determination that the vocational rehabilitation to be offered to the claimant is to be considered reasonable medical services.* Naturally, it requires the Board's determination on this matter first and a direction from the Board that the claimant avail himself of these services or suffer the consequences . . ." (Emphasis supplied).

Under the Board's interpretation of § 2353(a), a claimant's refusal of vocational rehabilitation services becomes a "refusal" within the meaning of the statute only after the Board first has decided the services to be reasonable. Thus, the issue for decision is: Does § 2353(a) require a Board decision that vocational rehabilitation services offered are reasonable and a direction that claimant accept them, prior to the application of statutory sanctions against him? I hold it does not.

Employer argues that § 2353(a) does not require a separate preliminary hearing on the reasonableness of vocational rehabilitation services, but only one hearing in which all factual issues are to be determined. According to employer, if the legislature had intended that the statutory sanctions be applicable only after the Board's preliminary determination that vocational rehabilitation services constitute "reasonable medical services", it would have provided "when" or "after" rather than "if" the Board so finds.

Also, employer says the Board's construction frustrates the statutory policy favoring rehabilitation since it encourages claimants to be uncooperative. A claimant can refuse vocational rehabilitation with the sure knowledge he will continue to receive benefits, at least until the Board's preliminary hearing is held, regardless of the reasonableness of his refusal.

§ 2353 lists conditions under which a claimant forfeits his right to compensation. § 2353(c) provides, for example, that if the claimant refuses to accept suitable employment, he forfeits compensation during the continuance of his refusal "unless in the opinion of the Board, such refusal was justifiable."

§ 2353(a) provides that if a claimant refuses reasonable medical services, he forfeits compensation for any injury or increase in incapacity resulting therefrom. "Reasonable medical services" are to include vocational rehabilitation services if the Board so finds.

■ The statutory policy is to encourage injured employees to accept employers' efforts to return them to the labor force by both physical and vocational rehabilitation. See, Bender v. Deflon Anderson Corp., 298 A.2d 346, 348 (Del.Super.1972); 2 Larson, Workmen's Compensation Law, § 61.20.

■ § 2353(a) requires that the Board make at least three factual findings before compensation may be forfeited. The Board must find, *first,* that there was a refusal of services and, *second,* that the refusal caused an injury or increase in incapacity. *Third,* the Board must find that the particular services offered, whether in-

volving vocational rehabilitation or regular medical services, were reasonable or, in other words, that the injured employee's refusal was unreasonable.

Nothing in § 2353(a) expressly directs that the sanctions for the claimant's refusing either regular medical or vocational rehabilitation services are to apply only after the Board finds the services to be reasonable.

The only conceivable statutory basis for the Board's interpretation is the fact that § 2353(a) specifically directs that the question whether vocational rehabilitation services are reasonable must be determined by the Board.

Significantly, § 2353(a) does not provide that reasonable medical services shall include vocational rehabilitation services "after the Board so finds" or "when the Board so finds". If this language had been used, the Board's interpretation would be correct. But in the absence of such language, its interpretation lacks support.

■ Presumably, if the Board determines that an injured employee has unreasonably refused regular medical services, the sanctions apply from the time of his actual refusal, not prospectively from the date of the Board's decision that the services are reasonable. See Fiorucci v. C. F. Braun & Co., 4 Storey 79, 173 A.2d 635 at 642–3 (Del.Super.1961); Miller v. Diamond Ice & Coal Co., 1 W.W.Harr. 140, 111 A. 745 (Del.Super.1920) (here the Board applied Ch. 233, Vol. 29, Laws of Delaware, p. 789, § 3193ss(c), the statutory predecessor of § 2353(a), denying compensation for injuries resulting from failure to accept reasonable treatment).

■ The claimant refuses rehabilitation services at his own risk. Under § 2353(c), the claimant refuses employment at his own risk; if the Board finds his refusal unjustifiable, his compensation is forfeited from the time of refusal. There is no reasonable basis apparent for treating a refusal of vocational rehabilitation services differently.

■ The recent amendment to § 2353(a), to be effective on July 1, 1975, provides:

"Refusal to accept rehabilitation services *pursuant to order of the Board* shall result in a loss of compensation for each week of the period of refusal." (Chap. 454, Vol. 59, Laws of Delaware). (Emphasis added).

This new statutory language after July 1, 1975, will mean that sanctions will apply only after the Board has ordered injured employees to accept rehabilitation services.

■ However, this Court is required to review the Board's decision on the state of the law as it existed. See, Bender v. Deflon Anderson Corp., *supra,* 298 A.2d at 348. In my opinion, the present § 2353(a) provides no basis for the Board's interpretation.

\* \* \*

The Board made no finding as to whether claimant's refusal resulted in "any injury or any increase in his incapacity".

"Injury" is defined in § 2301 as "violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated, and compensable occupational diseases arising out of and in the course of the employment". The statute does not define "incapacity". However, "incapacity", as used in Workmen's Compensation Statutes, is "generally held to mean incapacity to work, as distinguished from the loss or loss of use of a member of the body. It is based upon loss of earning power." 11 Schneider, Workmen's Compensation Text, § 2301 at p. 338. "Incapacity", as used in § 2347, has been construed as "incapacity to work". See Avon Products, Inc. v. Lamparski, 293 A.2d 559, 560 (Del.Supr.1972).

■ The measure of claimant's "incapacity to work", or his disability, is not limited to a consideration of his physical inability to perform work but generally includes consideration of his inability to secure work as well. Ham v. Chrysler Cor-

poration, 231 A.2d 258 at 261 (Del.Supr. 1967); Abex Corporation v. Brinkley, 252 A.2d 552, 553 (Del.Super.1969).

". . . [T]he determination of total disability requires a consideration and weighing of not only the medical and physical facts but also such factors as the employee's age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment, and the availability of such work. The proper balancing of the medical and wage-loss factors is the essence of the problem." Ham v. Chrysler Corporation, *supra,* 231 A.2d at 261.

■ Thus, there may be a decrease in a claimant's incapacity without change in his physical condition as, for example, if he undergoes vocational rehabilitation so that he is able once again to perform some marketable skill. Conversely, there may be an increase in incapacity without change in claimant's physical condition if he refuses retraining which would have enabled him to procure suitable employment.

Miller v. Diamond Ice & Coal Co., 1 W. W.Harr. 140, 111 A. 745 (Del.Super.1920), dealt with a claimant's refusal of reasonable medical services. The Board found that if claimant had followed his medical advice, his injured arm would have improved so that he would ultimately suffer only a 10% loss of earning capacity. The benefits were computed as if claimant had only that 10% disability, not his actual 33⅓% disability.

■ Similarly here, on remand, the employer must prove that if claimant had not refused the vocational rehabilitation services for the ten week period, his earning capacity measured by the factors listed in *Ham* would be greater now than it actually is. If employer can prove that claimant probably would have developed a marketable skill weeks sooner if he had accepted re-training, then that period will measure the § 2353(a) "increases in incapacity".

Accordingly, this case is remanded for findings as to whether the vocational reha-

bilitation services offered here were "reasonable medical services" and whether there was an increase in claimant's incapacity resulting from his refusal.

Remanded for action by the Board not inconsistent with this opinion.

It is so ordered.