# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMAZON.COM, SVCS., LLC, | ) | |
| | ) | |
| Employer/Appellant, | ) | |
| | ) | C.A. No. N23A-04-003 KMM |
| v. | ) | |
| | ) | |
| HECTOR ROOK, | ) | |
| | ) | |
| Claimant/Appellee. | ) | |

## MEMORANDUM OPINION

Date submitted: February 8, 2024
Date decided: April 25, 2024

On Appeal of the Industrial Accident Board: **AFFIRMED**


Kristopher T. Starr, Esquire, Marshall Dennehy, P.C., 1007 North Orange Street, Suite 600, Wilmington, DE 19801, *Attorney for Appellant Amazon.Com, SVCS., LLC*


Sean P. Gambogi, Esquire, Kimmel, Carter, Roman, Peltz & O'Neill, 56 West Main Street, 4th Floor, Plaza 273, Newark, DE 19714, *Attorney for Appellee Hector Rook*


**Miller, J.**

# I.    *Introduction*

Claimant Hector Rook ("Rook") was employed by Amazon.Com, Svcs., LLC ("Amazon"), when he allegedly sustained a work-related injury on May 24, 2022. Rook petitioned for workers' compensation benefits. Amazon denied that a work-related injury occurred and disputed that Rook's September 2022 surgery was reasonable and necessary, or was related to the alleged work incident. The Industrial Accident Board (the "Board") held a hearing on February 17, 2023, (the "Hearing") on Rook's claims.

The Board heard testimony from competing medical experts, among other witnesses. Neither expert relied on the Department of Labor, Division of Industrial Affairs, Health Care Practice Guidelines (the "Guidelines") to support their opinions and neither expert was questioned about the Guidelines.

During Amazon's closing argument it raised the Guidelines for the first time and requested that the Board take judicial notice of them. Amazon then argued that because some of Rook's treatment fell outside the Guidelines, the Board should find that the treatment was not reasonable and necessary.

In its decision, the Board recognized that some of Rook's treatment seemed inconsistent with the Guidelines, but stated that without an opinion of a medical expert, the Board could not construe the Guidelines as Amazon urged. The Board also recognized that treatment outside the Guidelines can be found to be reasonable

1

and necessary. The Board found Rook's expert to be more persuasive and ruled Rook sustained an injury while at work, and the subsequent surgery was related to the injury and was reasonable and necessary. Amazon appealed.

On appeal, Amazon argues the Board committed legal error by refusing to take judicial notice of the Guidelines. As discussed below, Amazon misconstrues the Guidelines, the Board's decision, and the rule on judicial notice. The Guidelines expressly state that treatment outside the Guidelines' parameters "may represent acceptable medical care, be considered reasonable and necessary treatment and, therefore, determined to be compensable." Thus, Amazon was not entitled to any inference that Rook's treatment was not reasonable and necessary simply because it fell outside the Guidelines. Accordingly, the Guidelines are not subject to judicial notice for the purpose Amazon argues.

Amazon also argues that the Board's decision is not supported by substantial evidence because: (i) the Board refused to take judicial notice of the Guidelines and failed to weigh Rook's expert's testimony against the Guidelines; (ii) Rook did not exhaust conservative treatment before resorting to surgery; and (iii) the surgery was not successful. The Board's findings, however, are supported by substantial evidence. The Board accepted Rook's expert's testimony over Amazon's expert and this Court will not second-guess the Board's credibility determinations.

Because the Board did not commit legal error and its findings are supported by substantial evidence, the Board's decision is AFFIRMED.

## II. *Factual Background*

### A. *The Hearing*

Four witnesses testified at the Hearing: Rook, Karen Guerrero (a co-worker), Rook's medical expert Dr. Eskander (by deposition), and Amazon's medical expert Dr. Piccioni (by deposition). Rook testified how he was injured at work and to his course of treatment. Karen Guerrero testified to observing Rook's injury.

Rook was employed by Amazon in the packaging department.[1] A packaging station has a supply of various sized boxes. At times during a shift, employees are required to restock their station with unassembled boxes.[2] On May 24, 2022, during the process of lifting a stack of unassembled boxes from a pushcart to restock his station, Rook's back locked and his left leg "gave out," resulting in an injury to his back.[3]

After visiting the Amazon in-house medical unit on May 25, where he was diagnosed as having sciatica, left side, and strain in the lumbar region, Rook was referred to physical therapy. It was recommended that he not return to work.[4]

---

[1] Industrial Accident Board February 17, 2023, Hearing Transcript ("Tr."), pp. 60-61; Record, A-62.
[2] *Id.*
[3] *Id.*, pp. 61-64 (A-62-63).
[4] Deposition transcript of Mark Eskander, M.D. ("Eskander Dep."), p. 26 (A-140).

Rook was released to sedentary duty by the physical therapist and in June, he was released to light-duty work.[5] Rook had approximately three physical therapy treatments.[6]

Not satisfied with the physical therapy treatments, Rook was then treated by a chiropractor, receiving approximately 37 treatments between June and September 2022. Rook was prescribed nonsteroidal anti-inflammatory medication, steroids, and muscle relaxers.[7] On June 7, 2022, the chiropractor recommended that Rook stay out of work. The chiropractor also ordered an MRI.[8]

Rook first visited Mark Eskander, M.D. on July 13, 2022. Dr. Eskander testified that Rook reported he had previously injured his back approximately 13 years earlier in a car accident, but he had had no symptoms in the last 12 years.[9]

Rook's symptoms on July 13 were consistent with the mechanism of injury that Rook reported to the urgent care provider and the pain radiating down his left leg.[10] His symptoms were also consistent with the June 13, 2022 MRI findings of L5 – S1 instability (which was later determined to be a result of a pars defect[11]),

---

[5] *Id.*, pp. 27-28 (A-140).
[6] *Id.*, pp. 12-13 (A-137).
[7] *Id.*, pp. 10, 58 (A-136, 148).
[8] *Id.*, p. 28 (A-140).
[9] Decision on Petition for Determination of Compensation Due, March 8, 2023 (the "Decision"), p. 4 (A-4); Eskander Dep., p. 16 (A-137).
[10] Eskander Dep., p. 14 (A-137).
[11] A pars defect is a crack in the bone. It is a defect in the architecture of the spine and can be present from birth. Eskander Dep., p. 24 (A-139-40).

spinal stenosis at L4 – L5 (due to a disc bulge and an annular tear), and compression at L5 – S1, which was consistent with the clinical finding of Rook's left side sciatica.[12] Dr. Eskander noted that at some visits with medical providers, Rook's straight leg raising ("SLR") tests was positive and at other visits the test was negative. Dr. Eskander explained that because the compression was not constant, he was not surprised that some tests were negative.[13]

Due to Rook's previous course of conservative treatment and with continued pain radiating down both legs, Dr. Eskander recommended an injection, which was administered.[14]

Rook returned to Dr. Eskander on August 25, at which time Rook was still experiencing pain radiating down both legs at a level of 8 out of 10. Based on the previous testing and conservative treatment, as well as a July 21, 2022, CT scan, Dr. Eskander now recommended surgical invention.[15]

Rook underwent spinal fusion surgery at L4 – L5 and L5 – S1, on September 20, 2022. During the surgery, Dr. Eskander also corrected the instability and the bulging disc.[16] Post-operatively, Rook's symptoms diminished somewhat, however, he was still having pain.[17]

---

[12] *Id.*, p. 12 (A-136).
[13] *Id.*, p. 19-20 (A138).
[14] *Id.*, p. 29 (A-141).
[15] *Id.*, pp. 29, 31 (A-141). The CT scan showed moderate compression at L5 – S1.
[16] *Id.*, pp. 34-35 (A-142).
[17] *Id.*, p. 36 (A-142).

Dr. Eskander opined that the treatment since May 24, 2022, including the surgery, was reasonable and necessary and related to the May 24 work incident. Dr. Eskander further opined that Rook could not yet return to work. The doctor was continuing to follow Rook and would explore other treatments to try to further alleviate his pain.[18]

Lawrence Piccioni, M.D. testified that typically a patient will undergo a series of steroid injections, up to four, before more invasive treatment is indicated.[19] Dr. Piccioni questioned the impact of the prior back injury on Rook's current condition. Dr. Piccioni pointed to a note in the physical therapist's records that indicated Rook had "chronic" off-and-on back symptomatology.[20] Dr. Piccioni testified that the physical therapy records did not reflect any neurologic symptoms, although Rook told Dr. Piccioni that he (Rook) told the therapist he had pain radiating down both his legs.[21]

In Dr. Piccioni's view, Rook displayed no objective symptoms that would warrant surgical intervention, pointing to the negative SLR tests, the CT scan, and the MRI. Rather, he believed that Rook's symptoms were all subjective (high pain level).[22] Indeed, he opined that all the neurologic exams were normal.[23] He further

---

[18] *Id.*, pp. 36-37 (A142-43).
[19] Deposition transcript of Lawrence Piccioni, M.D. ("Piccioni Dep."), pp. 13-14 (A170).
[20] *Id.*, p. 15 (A-170).
[21] *Id.*, p. 18 (A-171).
[22] *Id.*, p. 25 (A-173).
[23] *Id.*, p. 34 (A-175).

opined there were additional conservative treatments available that were not fully explored with Rook. Dr. Piccioni described Rook's medication treatment as "not the most aggressive," noting that medications like Gabapentin and Lyrica were not tried.[24] Dr. Piccioni also opined that additional injections could have been tried. Further, Dr. Eskander's recommendation of surgery two months after the injury, Dr. Piccioni opined, was too quick.[25]

When Dr. Piccioni was asked by Amazon's counsel whether the surgery was medically indicated, he responded: "I cannot state that because I don't do these types of surgeries, so my board would not allow me to testify on indications of the surgery … [but] my opinion would be that I would not recommend he undergo this surgical management."[26] When Dr. Piccioni was asked by Amazon's counsel whether he believed the surgery was reasonable or necessary, Dr. Piccioni testified: "I can't state that to a degree of medical probability whether it's reasonable or necessary."[27] Dr. Piccioni opined that the surgery was not related to the May 24, 2022 incident.[28] Rather, he believed the surgery was performed to address Rook's pain caused by

---

[24] *Id.*, p. 33-34 (A-175).
[25] *Id.*, p. 35 (A-175).
[26] *Id.*, pp. 39-40 (A-176).
[27] *Id.*, p. 40 (A-176).
[28] *Id.*, pp. 40-41 (A-176-77).

preexisting conditions.[29]  Finally, Dr. Piccioni opined the surgery was not successful as Rook was still experiencing pain.[30]

Amazon's counsel did not ask either medical expert about the Guidelines.  In closing arguments, Amazon's counsel read certain portions of the Guidelines into the record and argued that the Rook's treatment was contrary to Sections 2.6 and 6.4 of the Guidelines,[31] stating:

> What do the guides say about that?  They say you do not operate on the spine purely for pain.  So why do we have these treatment guidelines if they're not followed?  And surgeons always love to play kind of the backwards and forwards with that.  If the guides were followed to the T, they're reasonable and necessary.  If the guides don't work for them, well, they're just guides.[32]

## B.    *The Decision*

On March 8, 2023, the Board issued its 46-page Decision, 32 of which summarize the witnesses' testimony in detail.  The Board concluded that Rook sustained a work-related injury on May 24.  The Board found Rook "to be very credible" and believed "that he had been bending down to lift a stack of unassembled boxes when he felt a sharp pain in the back and his left leg gave out."[33]  Amazon does not challenge the work-related injury finding on appeal.

---

[29] *Id.*, p. 41 (A-177).
[30] *Id.*, p. 43 (A-177).
[31] Tr., pp. 139-40 (A-82).
[32] *Id.,* p. 144 (A-83).
[33] Decision, p. 34 (A-34).

The Board next found that Rook satisfied his burden to show that he suffered a low back injury on May 24.[34] The Board "found [Rook] to be credible and Dr. Eskander's opinion to be the most convincing."[35] In further support of its finding, the Board noted Dr. Piccioni's testimony that if a patient is performing activities which would be expected to cause pain, but he is not complaining of pain, that is evidence that the underlying condition was asymptomatic.[36] Rook was found to have worked various heavy duty jobs since the car accident 13 years prior and reported that he did so with no back pain.[37]

The Board further found that Rook's back injury was a result of the May 24 incident. In support of this conclusion, the Board "found Dr. Eskander's opinion to be [the] most convincing."[38] He testified that the disc bulge and the pars defect may have been preexisting, but there was no way to be certain because there were no pre-incident reports to compare. He opined that either these conditions were caused by the May 24 incident or they were preexisting, but asymptomatic. Under either scenario, the May 24 incident caused these conditions to become symptomatic.[39]

---

[34] *Id.*, p. 34 (A-34).
[35] *Id.*, p. 34-35 (A-34-35).
[36] *Id.*, p. 36 (A-36).
[37] The Board did not find Dr. Piccioni's testimony that Rook could have been experiencing pain for all those years but just did not report it, to be persuasive. Decision, p. 36, n. 9 (A-36, n. 9).
[38] Decision, p. 36 (A-36).
[39] *Id.*, p. 37 (A-37).

In contrast, the Board did not find Dr. Piccioni's testimony to be persuasive. The physical therapist's note that Rook had "chronic" back pain on which Dr. Piccioni relied, was found to be an outlier, unsupported by any other evidence.[40] Dr. Piccioni further conceded that the MRI showed enough pathology for Rook to "experienc[e] non-verified intermittent radicular complaints, as well as back pain."[41]

The Board then found, while it would have been ideal for nerve medications to have been tried before surgery, the preponderance of the evidence supported the conclusion that Rook's surgical procedure was reasonable and necessary.[42] The Board again found Dr. Eskander's testimony credible. Dr. Eskander admitted he had not exhausted all conservative treatment for Rook prior to the surgery, but testified that because Rook had "exhausted most reasonable conservative measures" and received no relief from these treatments, surgery was the appropriate next step.[43] Additionally, because nerve compression was involved, Dr. Eskander testified, surgery should be performed within three to six months of the injury to avoid further complications.[44]

The Board was not persuaded by Dr. Piccioni's opinion that the surgery was premature and that additional medications and/or injections should have been

---

[40] *Id.*, p. 38 (A-38).
[41] *Id.*
[42] *Id.*, p. 43 (A-42-43).
[43] *Id.*, pp. 40-41 (A-40-41).
[44] *Id.*, p. 41 (A-41).

administered before resorting to surgery.  Indeed, Dr. Piccioni testified he could not opine on whether the surgery was reasonable and necessary.

The Board also considered, and rejected, Amazon's argument that the surgery was not reasonable and necessary because it was not successful due to Rook's continued significant pain.[45]  The Board ruled that the focus of whether a procedure is reasonable and necessary is on the conditions at the time of the procedure, not the result of the procedure.[46]  Moreover, at the time Dr. Eskander last evaluated Rook, he was only three months post-surgery and thus, it was too early to determine the ultimate outcome of the procedure.

In considering whether the surgery was reasonable and necessary, the Board considered Amazon's argument that the surgery fell outside the Guidelines.  The Board stated:

> I should recognize that Employer's counsel made some very good arguments regarding the Delaware Health Care Practice Guidelines, specifically the Low Back Treatment Guidelines ("Guidelines"), in that certain parameters for surgery are seemingly inconsistent with Dr. Eskander's decision to operate on September 20, 2022.  However, the problem with this consideration is that neither of the medical experts opined regarding these specific Guidelines. Additionally, I note that the "Introduction" section of each of the various Treatment Guidelines indicate that:
>
>> Services rendered outside the Guidelines and/or variation in treatment recommendations from the Guidelines may represent acceptable medical care, be

---

[45] *Id.*, p. 43, n.20 (A-43, n.20).
[46] *Id.*

considered reasonable and necessary treatment and, therefore, determined to be compensable, absent evidence to the contrary, and may be payable in accordance with the Fee Schedule and Statute, accordingly.

Here, *I do not have a medical expert opining to a reasonable degree of medical probability that Claimant's surgical treatment falls outside of these particular Guidelines and also represents unreasonable and unnecessary treatment.* And, because the Guidelines state that even treatment outside of the Guidelines can represent acceptable medical care and be considered reasonable and necessary treatment, it would be inappropriate for me, a non-medical expert, *to apply these Guidelines here as Employer's counsel asks without an expert opinion to rely upon.* I add that even Dr. Piccioni, an orthopedic surgeon, testified that he was not able to opine as to the reasonableness and necessity of Claimant's surgical treatment to a reasonable degree of medical probability.[47]

Finally, the Board concluded that the May 24 incident necessitated the surgery. The Board supported this conclusion with Dr. Eskander's testimony regarding the consistency of Rook's complaints and symptoms.[48] The Board rejected Dr. Piccioni's testimony that the records showed inconsistencies (*i.e.* the physical therapist's note). The Board found the note to be an outlier and was likely due to the therapist "misunderstanding of [Rook's] description of the Amazon work process and/or his work duties."[49]

Amazon timely appealed the Board's Decision.

---

[47] *Id.*, p. 42 n.19 (A-42) (emphasis added).
[48] *Id.*, pp. 43-44 (A-43-44).
[49] *Id.*, p. 44 (A-44).

12

### III.    *The Parties' Contentions*

Amazon makes two arguments on appeal: (1) the Board committed legal error when it refused to take judicial notice of the Guidelines without testimony from a medical expert; and (2) the Board abused its discretion because Rook failed to show sufficient evidence that the surgery was reasonable and necessary.

On the first argument, Amazon contends the Board was required to take judicial notice of the Guidelines and therefore, it improperly excluded consideration of the Guidelines in making its determination of whether the surgery was reasonable and necessary.

Amazon's second argument is related to its first in that it argues the Board abused its discretion by refusing to weigh the credibility of Dr. Eskander's testimony against the Guidelines. The Guidelines, Amazon argues, contradict Dr. Eskander's opinion that surgery was reasonable and necessary.

Amazon further asserts: (i) Dr. Eskander ignored that there was no objective evidence of an injury; (ii) three months after the alleged injury was too soon to undergo surgical intervention when additional conservative treatments were available; and (iii) the surgery was not successful, which should have been weighed in considering Dr. Eskander's testimony, but which the Board ignored. This constitutes an abuse of discretion, according to Amazon.

Rook argues that the Board is free to accept one expert's testimony over the other's and this is what the Board did here. Not only are Dr. Eskander's opinions supported by the record, the Board did consider the Guidelines, and thus, the Board did not commit legal error, according to Rook.

Moreover, Rook argues, Amazon misconstrues the Guidelines. While the Guidelines provide a presumption of reasonableness if treatment falls within the Guidelines, there is no presumption of unreasonableness if treatment falls outside the Guidelines, as Amazon is arguing.

## IV. *Standard of Review*

This Court's review of the Board's decision is limited to an examination of the record for errors of law and a finding of whether substantial evidence exists to support the Board's findings. Thus, in the absence of an error of law and where substantial evidence supports the Board's findings, its decision must be affirmed.[50]

Substantial evidence (more than a scintilla and less than a preponderance) is relevant evidence that a reasonable mind would be willing to accept as adequate in supporting a conclusion.[51]

It is solely within the Board's purview to weigh the evidence, assess the credibility of witnesses, resolve conflicts in the evidence, and make factual

---

[50] *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022) (citing *Olney v. Cooch*, 425 A.2d 610 (Del. 1981)); *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133 (Del. 2006).
[51] *Powell v. OTAC, Inc.*, 223 A.3d 864, 871 (Del. 2019); *Munyan*, 909 A.2d at 136.

findings.[52] The Board resolves conflicts in medical testimony as the finder of fact and the reviewing court takes "due account" of the Board's expertise.[53] Thus, the Board is free to accept one expert's testimony over another's.[54]

While legal issues are reviewed *de novo,*[55] the Court affords significant deference to the Board's fact and credibility determinations.[56] Absent errors of law, the Board's decision is reviewed for abuse of discretion.[57] Abuse of discretion occurs when a tribunal has "exceeded the bounds of reason in view of the circumstances and has ignored recognized rules of law or practice so as to produce injustice."[58]

## V. *Discussion*

### A. *The Board did not commit legal error.*

#### 1. *The relevant Guidelines*

Workers' Compensation laws were enacted for the benefit of injured workers and thus, the Court will construe the statute to resolve any reasonable doubt in favor

---

[52] *Zayas*, 273 A.3d at 785 (citing *Powell*, 223 A.3d 864 (Del. 2019)).

[53] *Id.* (citing *Spellman v. Christiana Care Health Servs.*, 74 A.3d 619 (Del. 2013)).

[54] *Id.*

[55] *Id.* (citing *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892 (Del. 1994)); *Cline v. Nemours Found.*, 2023 WL 6622211 at *10 (Del. Super. Oct. 11, 2023).

[56] *Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 395 (Del. 2015) (citing *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340 (Del. 1993)); *Powell*, 223 A.3d at 872. *See also* 29 *Del. C.* § 10142.

[57] *Glanden v. Land Prep, Inc.* 918 A.2d 1098, 1100 (Del. 2007).

[58] *Harper v. State*, 970 A.2d 199, 201 (Del. 2009).

of the worker.[59]  Effective 2008, the Workers' Compensation statute was amended to include Sections 2322A – 2322F, which, among other things, established the Workers' Compensation Oversight Panel.[60]  The Oversight Panel was charged with adopting and maintaining "a coordinated set of health-care practice guidelines and associated procedures to guide utilization of health-care treatments in workers' compensation.…"[61]  "Services rendered by any health-care provider certified to provide treatment services for employees shall be presumed, in the absence of contrary evidence, to be reasonable and necessary if such services conform to the most current version of the Delaware health-care practice guidelines."[62]

The Guidelines, relevant here, are codified in Title 19 of the Delaware Administrative Code, Section 1342, Part D, titled "Low Back Treatment Guidelines."[63]  The Introduction to the Guidelines reiterates that: "Services rendered by any health care provider certified … to provide treatment or services for injured employees shall be presumed, in the absence of contrary evidence, to be reasonable and necessary if such treatment and/or services conform to the most current version of the" Guidelines.[64]  The Introduction also states, "Services rendered outside the

---

[59] *Poole v. State*, 77 A.3d 310, 317 (Del. Super. 2012); *Histed*, 621 A.2d 340; *Hirneisen v. Champlain Cable Corp.,* 892 A.2d 1056, 1059 (Del. 2006).
[60] *See Id.* at 317-18; 19 *Del. C.* § 2322A.
[61] 19 *Del. C.* § 2322C(1).
[62] 19 *Del. C.* § 2322C(6).
[63] 19 Del. Admin. Code § 1342-D-1.0, *et seq.*
[64] *Id.*

Guidelines and/or variation in treatment recommendations from the Guidelines may represent acceptable medical care, be considered reasonable and necessary treatment and, therefore, determined to be compensable, absent evidence to the contrary . . ."[65]

The relevant sections of the Guidelines related to the challenged surgery are:

> 2.6 **SURGICAL INTERVENTIONS** should be contemplated within the context of expected functional outcome and *not purely for the purpose of pain relief*. The concept of "cure" with respect to surgical treatment by itself is generally a misnomer. *All operative interventions must be based upon positive correlation of clinical findings, clinical course, and diagnostic tests*. A comprehensive assimilation of these factors must lead to a specific diagnosis with positive identification of pathologic conditions.[66]

> 6.4.2 **Surgical Indications**: A timely decision-making process is recommended when considering patients for possible fusion. For chronic low back problems, *fusion should not be considered within the first 4 months of symptoms*, except for fracture, dislocation, recurrent herniation, or gross instability….[67]

The Guidelines further provide that a "[p]lanned fusion to exceed two levels requires confirmatory second opinion."[68]

> **2.** *Amazon misconstrues the Guidelines, D.R.E. 201, and the Decision.*

Amazon asserts the Board was required to take judicial notice of the Guidelines and consider them when weighing Dr. Eskander's testimony because Rook's surgery did not conform to the Guidelines and Dr. Piccioni's testimony was

---

[65] 19 Del. Admin. Code §1342-B-1.0.
[66] 19 Del. Admin. Code § 1342-D-2.6, Surgical Interventions (emphasis added).
[67] 19 Del. Admin. Code § 1342-D-6.4.2, Spinal Fusion (emphasis added).
[68] 19 Del. Admin. Code § 1342-D-6.4.3.1.

"contrary evidence."[69]  Specifically, Amazon contends the surgery was outside the Guidelines because: (i) there were no positive correlated clinical findings or objective tests indicating the need for surgery; (ii) the surgery was within 4 months of the injury; (iii) no second opinion was obtained; and (iv) the surgery was purely for purposes of pain relief.  Relying on *Moore v. Merit Employee Relations Board,*[70] Amazon asserts that the Board's refusal to take judicial notice of the Guidelines without expert testimony, constitutes an error of law.[71]

The Board operates less formally than a court of law and thus, the rules of evidence do not strictly apply to workers' compensation hearings.[72] Accordingly, the Board may relax evidentiary rules in its proceedings, but not rules "which are designed to ensure the fairness of the procedure."[73]  "The exclusion of relevant, material, and competent evidence will be grounds for reversal if that refusal is prejudicial."[74]

---

[69] Appellant's Opening Brief on Appeal ("OB"), at pp. 14-15.

[70] *Id.*, at p. 13.

[71] *Id.*, at p. 10.

[72] *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 647 (Del. 1993).

[73] *Torres v. Allen Family Foods,* 672 A.2d 26, 31 (Del. 1995) ("While the nature of the proceedings and the spirit of the Compensation Law justify some relaxation of the technical rules of evidence, nevertheless, it is fundamental that the right to confront witnesses, to cross-examine them, to refute them, and to have a record of their testimony must be accorded unless waived.") (citation omitted).

[74] *Id.,* at 33 (finding Board's refusal to issue subpoenas to compel witnesses to testify was harmless error because their hearsay evidence could have been considered and even if the witnesses testified live, it would not have assisted the claimant in meeting his burden of proof).

To be eligible for judicial notice under Delaware Rule of Evidence 201, an adjudicative fact must not be subject to reasonable dispute because it is: "(1) generally known within the trial court's territorial jurisdiction or, (2) can be accurately and readily determined from sources whose accuracy cannot be questioned."[75]

Amazon is correct that the Board may take judicial notice of the Guidelines – the fact that the Guidelines exist, and the various parameters contained therein for certain treatment. Indeed, treatment provided by a certified health care provider that conforms to the Guidelines is presumed, absent contrary evidence, to be reasonable and necessary.[76] But, Amazon misconstrues Rule 201, the Guidelines, and the Decision.

As Amazon would have it, under the guise of taking judicial notice of the Guidelines, the Board must consider the fact that Rook's surgery fell outside the Guidelines (no second opinion and surgery was in less than four months, for example) and weigh that to mean the treatment was not reasonable and necessary.[77] But that is not how Rule 201 or the Guidelines work.

---

[75] D.R.E. 201; *see also MidFirst Bank v. Mullan*e, 2022 WL 4460810 at *6, n.3 (Del. Super. Sept. 26, 2022).
[76] 19 *Del. C.* § 2322C(6).
[77] *See* Tr. at 144 (A-83).

19

First, Rule 201 may be used to take notice of undisputed facts – such as the existence and parameters of Guidelines or agency rules.[78] Rule 201, however, cannot be used to establish *disputed facts*.[79] Here, the disputed fact was whether the surgery was reasonable and necessary. Rook did not seek a presumption under the Guidelines. Dr. Eskander did not testify that his recommendation for surgery conformed to the Guidelines. Rather, Rook sought to meet his burden of proof by relying on Dr. Eskander's opinions, not the Guidelines.

Second, the Guidelines create a presumption of "reasonable and necessary," but the opposite is not true; that is, a procedure that falls outside the Guidelines is not presumptively unreasonable and unnecessary.[80] Construing the Guidelines as Amazon is suggesting is directly contrary to the Guidelines. The Guidelines acknowledge that "[s]ervices rendered outside the Guidelines and/or variation in treatment recommendations from the Guidelines *may represent acceptable medical care, be considered reasonable and necessary treatment* and, therefore, determined to be compensable, absent evidence to the contrary . . . ."[81] Unless a claimant is

---

[78] *See Moore v. Merit Emp. Rels. Bd.*, 2023 WL 2808085 (Del. Super. Apr. 6, 2023), *aff'd*, 308 A.3d 168 (Del. 2023) (court took judicial notice of the definition of "just cause" in a State Merit Rule created by the Merit Employee Relations Board).

[79] *See Totta v. CCSB Fin. Corp.,* 2021 WL 4892218, at *3-4 (Del. Ch. Oct. 20, 2021) (noting that the Delaware Supreme Court has urged that the judicial notice doctrine "be used with caution" and that while the court could take judicial notice of certain documents, it could not take notice of them for the truth of the documents' content) (citing *Fawcett v. State*, 697 A.2d 385, 388 (Del. 1997)).

[80] *See Cline v. Nemours Found.*, 2023 WL 6622211 at *5 (Del. Super. Oct. 11, 2023) ("Deviations from the Guidelines may be acceptable, however").

[81] 19 Del. Admin. Code 1342-B-1.0 (emphasis added).

seeking to take advantage of the presumption of reasonableness under the Guidelines, the fact that a procedure falls outside the Guidelines' parameters does not create an inference that the procedure was not reasonable and necessary. But this is exactly what Amazon urges.

Such a reading is not supported by the Guidelines and would be inconsistent with the purpose of workers' compensation laws – protection of injured workers. When treatment falls outside the Guidelines, the injured worker bears the burden of proving by a preponderance of evidence that the treatment was reasonable and necessary.[82] As Amazon would have it, a claimant would not only have to prove the treatment was reasonable and necessary, he would also have to prove that the corresponding Guidelines are unreasonable in the particular circumstance. No such burden exists in the workers' compensation law. Unless medical expert testimony is provided to substantiate a claim that such deviation from the Guidelines weighs in favor of a finding that the treatment was not reasonable and necessary, the Guidelines cannot be used as affirmative evidence so show that the treatment was not reasonable and necessary. Thus, Amazon seeks to use a rule of evidence to apply an inference or presumption that simply does not exist.

---

[82] *See Poole*, 77 A.3d at 322-23 (noting that the 2007 amendments to the Workers' Compensation Act did not amend 19 *Del. C.* § 2322(a), which still provides: "[d]uring the period of disability the employer shall furnish reasonable surgical, medical, … chiropractic and hospital services, medicine and supplies….").

Finally, the Board did recognize the Guidelines' parameters and that "certain parameters [in the Guidelines] for surgery are seemingly inconsistent" with Dr. Eskander's course of treatment.[83] Thus, the Board recognized Rook was not entitled to a presumption that the surgery was reasonable and necessary. Therefore, a finding of "reasonable and necessary" had to have been supported by a preponderance of the evidence, without a presumption. That is what the Board found here. The Board found Dr. Eskander's recommendation for surgery under the conditions that existed when he examined Rook in July 2022 and Dr. Eskander's opinion that the surgery was reasonable and necessary, to be persuasive. This testimony satisfied Rook's burden of proof.

In contrast, Amazon offered no countervailing expert testimony. Dr. Piccioni expressly could not opine on whether the surgery was reasonable and necessary.[84] To be sure, the Board was not required to accept unrebutted expert testimony if it did not find such testimony credible. But here, it did find Dr. Eskander to be credible. This Court will not second-guess that determination.

---

[83] Decision, p. 42, n.19 (A-42, n.19).
[84] Piccioni Dep., pp. 39-40 (A-176).

Further, as Amazon admits, the Board was free to accept one expert's testimony over the other's.[85] Thus, even with the other opinions Dr. Piccioni offered, the Board found Dr. Eskander more credible.

Without asking either medical expert whether the standards in the Guidelines impacted a determination of the necessity of the surgery, Amazon was attempting to use the Guidelines as affirmative expert testimony. There is no basis for it to do so.[86] This is essentially what the Board found. The Board recognized that without medical expert testimony "opining to a reasonable degree of probability" that the surgery falls outside the Guidelines and also represents "unreasonable and unnecessary treatment," the Board could not construe the Guidelines in the manner Amazon wanted.

Accordingly, the Board did not commit legal error.

**B.** ***The Board's finding that the surgery was reasonable and necessary is supported by substantial evidence.***

In support of its argument that the Board's finding of reasonable and necessary was not supported by substantial evidence, Amazon relies, in part, on its argument that the Board committed error by refusing to consider the Guidelines in assessing

---

[85] OB at 17 citing *Simmons v. Del. State Hosp.*, 660 A.2d 384, 388 (Del. 1995) and *DiSabatino Bros., Inc. v. Wortman*, 453 A.2d 102, 106 (Del. 1982).

[86] *See Abrahams v. Chrysler Group, LLC*, 44 A.3d 921 (TABLE) (Del. 2012), 2012 WL 1744270, at *2 (attorney's use of a medical treatise during closing arguments, which was not addressed with any witness, amounted to an improper offering medical expert testimony because the opposing party did not have any opportunity to question the witnesses on the treatise).

Dr. Eskander's testimony. Amazon further argues the Board abused its discretion in accepting Dr. Eskander's testimony because he conceded there were no objective findings supporting the need for surgery and the intermittent symptoms found by Dr. Eskander are not indications of a need for surgery. Additionally, Amazon argues that Dr. Eskander did not exhaust conversative treatment and Dr. Piccioni opined additional treatments could have been tried before resorting to surgery. Finally, Amazon argues that the surgery was not successful and thus, was only intended to relieve Rook's pain, which is not an indication for surgery, per the Guidelines.

Amazon's argument that the Board committed error in allegedly refusing to consider the Guidelines has already been addressed. Thus, the Board did not commit an abuse of discretion because it was not required to construe the Guidelines as Amazon demands.

Amazon's argument that the Board's decision is not supported by substantial evidence because Rook had not exhausted conservative treatment before resorting to surgery also fails. Dr. Eskander admitted he could have tried additional conservative treatments.[87] But because Rook "had completely failed [to get relief from] the conservative treatment measures he was provided," it was Dr. Eskander's opinion that, due to Rook having tried *reasonable* conservative treatment options (including physical therapy, chiropractic care, and both steroid and nonsteroid

---

[87] Decision, p. 41 (A-41).

24

inflammatory medications) and his then-current condition, additional conservative treatment was not warranted.[88]

Dr. Eskander further testified that while there were no objective tests to confirm the radicular complaints, Rook's condition can produce intermittent positive neurological findings. This explained the intermittent positive SLR tests.[89] He further testified Rook's subjective complaints were "in the exact distribution to correlate with the MRI and other diagnostic findings."[90]

Dr. Piccioni testified additional conservative treatment should have been explored. But he also conceded that the pathology on the MRI could have caused the "non-verified radicular symptoms."[91]

The Board weighed the evidence, including the fact that Dr. Piccioni could not give an opinion on whether the surgery was reasonable or necessary.[92] That additional nerve medications were not tried before surgery, gave the Board "pause,"

---

[88] Even the Guidelines, which Amazon relies on, require only the exhaustion of *reasonable* conservative treatment, measured on a subjective standard. *Cline*, 2023 WL 6622211 at \*7 (citing *Brittingham v. St. Michael's Rectory*, 788 A.2d 519, 522 (Del. 2002) ("The Board 'must determine whether the course of conservative treatment was reasonable for the specific claimant and not whether the treatment is reasonable generally for anyone with the claimant's condition'")).
[89] Decision, p. 40 (A-40).
[90] *Id.*
[91] *Id.*
[92] Decision, pp. 42-43 (A-42-43).

25

but the Board found Dr. Eskander's testimony persuasive. The Board was free to reject Dr. Piccioni's testimony.[93]

Amazon's final argument is that the surgery was not reasonable and necessary because it did not provide Rook with any relief.[94] To support this argument, Amazon relies on *Hernandez v. Boston Market, Inc.*[95] Amazon's reliance is misplaced. The Court in *Hernandez* affirmed the board's finding that the claimant's continued chiropractic care was not compensable because it was not improving her condition but only providing palliative care, and she could have obtained the same result with over-the-counter pain relievers and a heating pad.[96] Thus, *Hernandez* does not stand for the proposition that a surgery is not compensable merely because it may not have alleviated the patient's pain. Rather, *Hernandez* ruled that the employer is not required to continue to pay for palliative care when other less expensive remedies providing the same level of relief are available.[97]

---

[93] *Cottman v. Burris Fence Constr.*, 918 A.2d 338 (TABLE) (Del. 2006), 2006 WL 3742580, at *4 (Dec. 19, 2006) ("The IAB's 'acceptance of expert testimony, even when contradicted by another expert, qualifies as substantial evidence for purposes of appeal'") (citation omitted); *Poole*, 77 A.3d at 323 (quoting *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *3 (Del. Super. May 5, 1995) ("Whether medical services are necessary and reasonable or whether the expenses are incurred to treat a condition causally related to an industrial accident are purely factual issue[s] within the purview of the Board.")).

[94] OB at 20.

[95] 878 A.2d 461 (TABLE) (Del 2005), 2005 WL 1653716 (June 29, 2005).

[96] *Id.* at *2.

[97] *See Klenk v. Medical Ctr. of Del.*, 2008 WL 250548, at *6 (Del. Super. Jan 30, 2008).

Furthermore, while Rook was still having pain, the surgery did alleviate the pain somewhat. And, Dr. Eskander testified that it was still too soon after the surgery (four months) to determine the full extent of the impact of the surgery.[98] Dr. Eskander testified that it could take at least six months before a patient starts to receive the full benefit of a surgery. The Board appropriately did not consider the surgery "in terms of negative results" in reaching its conclusion.[99]

Accordingly, the Board's findings are supported by substantial evidence.

The Board's Decision is **AFFIRMED**.

**IT IS SO ORDERED**.

*/s/Kathleen M. Miller*
Judge Kathleen M. Miller

---

[98] Decision, p. 43, n.20 (A-43, n.20).
[99] *Id.*